1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT
8               EASTERN DISTRICT OF CALIFORNIA
9

10   MONIKA AGUIRRE,                          Case No.   1:20-cv-00414-NONE-EPG

11                      Plaintiff,            FINDINGS AND RECOMMENDATIONS,
                                              RECOMMENDING THAT DEFENDANT'S
12          v.                                MOTION TO COMPEL ARBITRATION AND
                                              DISMISS ACTION BE GRANTED
13   AETNA RESOURCES, LLC,
                                              (ECF No. 12)
14                      Defendant.
                                              OBJECTIONS, IF ANY, DUE WITHIN 14
15                                            DAYS

16
17          On June 24, 2020, Defendant Aetna Resources, LLC, filed a motion to compel Plaintiff

18   Monika Aguirre to participate in arbitration and to dismiss this action. (ECF No. 12). On October

19   20, 2021, this motion was referred to the undersigned for findings and recommendations. (ECF

20   No. 34). For the reasons given below, the Court will recommend that Defendants' motion to

21   compel arbitration be granted and that this action be dismissed without prejudice.

22   I.     BACKGROUND

23          Plaintiff is a former employee of Defendant. She was hired as a claims processor in 1991

24   and terminated in 2017, by which time she was a director of third-party administrators. (ECF 1-1,

25   p. 6). In October 2019, Plaintiff filed an employment discrimination suit against Defendant in

26   state court bringing seven causes of action: statutory failure to engage in the interactive process;

27   statutory failure to accommodate a disability; retaliation; statutory failure to prevent retaliation;

28   wrongful termination, and two claims of statutory discrimination. (*See id.* at 6-17). Plaintiff also

                                              1

1    sought injunctive relief requiring Defendant to prohibit disability discrimination from occurring

2    in its workplace. (*Id.* at 13). Defendant answered the lawsuit on March 19, 2020, in state court

3    and filed a notice of removal in this Court the next day. (ECF No. 1).

4         On June 24, 2020, Defendant filed the instant motion to compel arbitration and dismiss

5    this action under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* (ECF Nos. 12, 13). That

6    same day, this Court issued a scheduling order. (ECF No. 16). However, pursuant to the parties'

7    stipulation, the Court later stayed discovery until two weeks after a ruling on the motion to

8    compel arbitration. (ECF Nos. 19, 20).

9         Briefing on the motion to compel arbitration was extended to allow the parties to

10   participate in a settlement conference. (*See* ECF Nos. 20, 28). After the case failed to settle,

11   Plaintiff filed her opposition brief on February 8, 2021, and Defendant filed its reply on February

12   8, 2021. (ECF Nos. 31, 21).

13   **II.    APPLICABLE LAW**

14        The FAA states that any agreement within its scope "shall be valid, irrevocable, and

15   enforceable," 9 U.S.C. § 2, and permits a party "aggrieved by the alleged . . . refusal of another to

16   arbitrate" to petition for an order compelling arbitration, 9 U.S.C. § 4.[1] *See Chiron Corp. v. Ortho*

17   *Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In deciding whether to compel arbitration,

18   generally, a court must decide: "(1) whether there is an agreement to arbitrate between the parties;

19   and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130

20   _____

21   [1] The FAA applies, in relevant part, to a "contract evidencing a transaction involving commerce to settle
     by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2.  The

22   language "involving commerce" in the FAA has been interpreted to mean "the functional equivalent of the
     more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible

23   exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)
     (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995)). Defendant argues, and

24   Plaintiff does not dispute, that the arbitration agreements at issue here involve commerce because the
     agreements were provided to hundreds of its employees located in various states throughout the country.

25   *See Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 904 F. Supp. 1142, 1147 (D. Haw. 1995) ("Clearly the
     insurance policy Aetna issued to Wailua involves interstate commerce. Aetna is a Connecticut corporation,

26   Wailua is a California Limited Partnership and the properties insured under the policy are located in
     Hawaii and other states."); *cf. Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal.

27   2011) (noting that "9 U.S.C. § 2, applies to transactions involving interstate commerce, including
     employment agreements where the employment relationship involves interstate commerce"); (ECF No. 13,

28   p. 16).

1   (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  The party

2   moving to compel arbitration bears the burden of demonstrating that both elements are met.

3   *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean

4   View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

5       Although a court generally decides whether there is an agreement to arbitrate between the

6   parties and whether the agreement covers the dispute, the "parties can agree to arbitrate even

7   these preliminary gateway questions—provided any such agreement is clear and unmistakable."

8   *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021) (internal quotation marks and

9   citations omitted). The Supreme Court has referred to this as agreeing to arbitrate arbitrability

10   issues. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[W]e have

11   held that parties may agree to have an arbitrator decide not only the merits of a particular dispute

12   but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

13   arbitrate or whether their agreement covers a particular controversy.") (internal citations omitted).

14   The parties may do so through what is known as a delegation provision, which "is simply an

15   additional, antecedent agreement the party seeking arbitration asks the federal court to enforce,

16   and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-

17   A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Where a delegation provision exists,

18   "courts first must focus on the enforceability of that specific provision, not the enforceability of

19   the arbitration agreement as a whole" because doing "otherwise would render the delegation

20   provision a nullity." *Brice*, 13 F.4th at 827.

21       In resolving a motion to compel arbitration, "[t]he summary judgment standard [of

22   Federal Rule of Civil Procedure 56] is appropriate because the district court's order compelling

23   arbitration is in effect a summary disposition of the issue of whether or not there had been a

24   meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th

25   667, 670 (9th Cir. 2021) (internal quotation marks and citation omitted). Under this standard,

26   "[t]he party opposing arbitration receives the benefit of any reasonable doubts and the court

27   draws reasonable inferences in that party's favor, and only when no genuine disputes of material

28   fact surround the arbitration agreement's existence and applicability may the court compel

3

arbitration." *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-cv-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). "A material fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conversely, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Defendant, as the moving party, bears "the initial burden of production and the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Defendant "carries its burden of production, [Plaintiff] must produce evidence to support [her] . . . defense." *Id.*

## III.     THE PARTIES' POSITIONS

### A.     Defendant's Motion

Defendant argues there are several binding agreements to arbitrate that apply here. (ECF No. 13, p. 9). It asserts that Plaintiff agreed to arbitrate all employment-related disputes in exchange for voluntarily electing to receive over 1500 total stock options in 2003, 2004, 2005, 2015, and 2016 through Aetna's Incentive Plans, contending that Plaintiff would not have faced any adverse consequence to her employment should she have declined participation. For the 2003, 2004, and 2005 stock option grants, Plaintiff participated in Aetna's 2002 Incentive Plan. (*Id.* at 10; *see* ECF Nos. 14-1, 14-2). Receiving stock option grants under this 2002 Plan required Plaintiff to agree to a mandatory arbitration provision, which provided in part as follows:

> (a) As consideration for the grant of the Option, except as otherwise specified, the Grantee and the Company will resolve employment-related legal disputes in accordance with the Aetna Employment Dispute Arbitration Program set forth below.

> (b) Grantee understands that in arbitration, an arbitrator instead of a judge or jury resolves the dispute and the decision of the arbitrator is final and binding. Grantee also understands that WITH RESPECT TO CLAIMS SUBJECT TO THE ARBITRATION REQUIREMENT, ARBITRATION REPLACES THE RIGHT OF THE GRANTEE AND THE COMPANY TO SUE OR PARTICIPATE IN A LAWSUIT.

(c) This shall apply to claims brought on or after the date the Grantee becomes subject to this Program, even if the facts and circumstances relating to the claim occurred prior to that date. Grantee IS ADVISED TO, AND MAY TAKE THE OPPORTUNITY TO, OBTAIN LEGAL ADVICE BEFORE FINAL ACCEPTANCE OF THIS OFFER.

(ECF No. 14-1, p. 8). Defendant contends that the 2002 Plan also contained delegation

provisions. Specifically, one provision stated that "[a] dispute as to whether this Program applies

must be submitted to the binding arbitration process set forth in this Program." *Id.* And another

provision stated that "the arbitration will be administered by the American Arbitration

Association (the 'AAA') and will be conducted pursuant to the AAA's National Rules for

Dispute Resolution," (*id.*), which serves to incorporate the AAA's Rules, with AAA Rule 6(a)

stating that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including

any objections with respect to the existence, scope or validity of the arbitration agreement, (ECF

No. 15-6, p. 13).[2]

The 2015 and 2016 stock option grants were governed by Aetna's 2010 Incentive Plan.

(ECF No. 13, p. 12; *see* ECF Nos. 14-10, 14-11). Participation in the 2010 Plan also required

Plaintiff to agree to a mandatory arbitration provision, which provided in part as follows:

(i) Except as otherwise specified in this Agreement, the Grantee and the Company agree that all employment-related legal disputes between them will be submitted to and resolved by binding arbitration, and neither the Grantee nor the Company will file or participate as an individual party or member of a class in a lawsuit in any court against the other with respect to such matters. This shall apply to claims brought on or after the date the Grantee accepts this Agreement, even if the facts and circumstances relating to the claim occurred prior to that date and regardless of whether the Grantee or the Company previously filed a complaint/charge with a government agency concerning the claim.

For purposes of Article VI (e) of this Agreement, "the Company" includes Aetna Inc., its Subsidiaries and Affiliates, their predecessors, successors and assigns, and those acting as representatives or agents of those entities. THE GRANTEE UNDERSTANDS THAT, WITH RESPECT TO CLAIMS SUBJECT TO THE ARBITRATION REQUIREMENT, ARBITRATION REPLACES THE RIGHT OF THE GRANTEE AND THE COMPANY TO SUE OR PARTICIPATE IN A LAWSUIT. THE GRANTEE ALSO UNDERSTANDS THAT IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR

---

[2] Defendant contends, and Plaintiff does not dispute, that the 2005 option grant required Plaintiff to agree a substantively similar mandatory arbitration provision. (ECF No. 13, p. 11 n.1; *see* ECF No. 14-3, pp. 10-11 (arbitration provision governing 2005 Option Grant)).

5

INSTEAD OF A JUDGE OR JURY, AND THE DECISION OF THE ARBITRATOR IS FINAL AND BINDING.

(ii) THE GRANTEE UNDERSTANDS THAT THE ARBITRATION PROVISIONS OF THIS AGREEMENT AFFECT THE LEGAL RIGHTS OF THE GRANTEE AND THE COMPANY AND ACKNOWLEDGES THAT THE GRANTEE HAS BEEN ADVISED TO, AND HAS BEEN GIVEN THE OPPORTUNITY TO, OBTAIN LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT.

(ECF No. 14-10, p. 9). The 2010 Plan also contained purported delegation provisions, providing that "[a] dispute as to whether Article VI (e) of this Agreement [the section titled, "Employment Dispute Arbitration Program - Mandatory Binding Arbitration of Employment Disputes"] applies must be submitted to the binding arbitration process set forth in this Agreement" and another provision stating that "the arbitration will be administered by the American Arbitration Association (the 'AAA') and will be conducted pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures," which thus incorporated AAA's Rule 6(a). (*Id.* at 9, 10).

Defendant states that for all the stock option grants, Plaintiff received emails highlighting select terms and conditions of the Incentive Plans, "including provisions explaining that acceptance of the Option Grants was conditioned upon the Grantee's agreement to submit all employment-related disputes to binding arbitration." (ECF No. 13, pp. 11, 13). Defendant asserts that its records confirm that Plaintiff electronically accepted the stock option grants for 2003, 2004, 2005, 2015, and 2016. (*Id.* at 14).

In support of its motion to compel arbitration, Defendant submits two declarations. The first is from Barbara Waters, the Director of Equity Compensation for Aetna Inc. (ECF No. 14). Among other things, this declaration discusses the Incentive Plans discussed above (with attached copies), the emails concerning the stock option grants (with attached copies), and the records showing that Plaintiff accepted the stock option grants (with attached copies). (*Id.*). The second declaration is from defense counsel Jason Bluver. (ECF No. 15). Among other things, this declaration discusses the parties' history in trying to informally resolve whether Plaintiff is required to arbitrate her claims. (*Id.*).

Defendant argues that by accepting the stock option grants, Plaintiff has agreed to be

1   bound by the terms of the arbitration agreements, which require her to arbitrate her employment

2   discrimination claims rather than litigating them before the Court. Additionally, because the

3   arbitration agreements contain purported delegation provisions, Defendant argues that an

4   arbitrator, and not the Court, must decide any issue regarding whether the arbitration agreements

5   are unconscionable. Defendant asks that Plaintiff be ordered to arbitrate her claims in accordance

6   with the terms of the arbitration agreement and that this case be dismissed.

7          **B.     Plaintiff's Opposition**

8          Plaintiff argues that there is not an enforceable agreement to arbitrate between the parties,

9   and, if there were, that agreement does not cover all the claims in Plaintiff's complaint.

10  Specifically, Plaintiff argues that there is no enforceable arbitration agreement because (1) neither

11  Plaintiff nor Defendant ever signed any of the above arbitration agreements; (2) Defendant has

12  failed to submit sufficient evidence to authenticate the documents (including the arbitration

13  agreements) it has submitted in support of its motion to compel arbitration and Barbara Waters'

14  declaration lacks personal knowledge and a proper foundation for the exhibits; (3) Defendant has

15  waived any right to compel arbitration by removing this case; (4) any arbitration agreement

16  would be barred under California law; and (5) the agreements are unconscionable. (ECF No. 31).

17  Moreover, Plaintiff argues that, even if there were a binding arbitration agreement, (1) her causes

18  of action are not covered by the arbitration agreements, and (2) her request for injunction relief

19  cannot be arbitrated. (*Id.*).

20         In support of her opposition, Plaintiff submits two declarations. The first is from Plaintiff.

21  (ECF No. 31-1). In pertinent part, this declaration states as follows:

22         Here, I have never signed an Arbitration Agreement with defendant AETNA
           RESOURCES, LLC. during my employment with the company.

23         Additionally, I was not aware that the Stock Options email had a hidden
24         Arbitration Agreement in them. If I was asked to sign an Arbitration Agreement, I
           would not have signed it. I demand a Jury Trial in this action. I decline to waive
25         my right to a jury trial.

26  (*Id.*). The second declaration is from Plaintiff's counsel, Larry Shapazian (ECF No. 31-2).

27  Among other things, this declaration authenticates attached exhibits to the opposition, such as

28  Plaintiff's complaint. (*Id.*).

1       Plaintiff asks this court to deny the motion to compel arbitration. (ECF No. 31, p. 15).

2    Plaintiff also notes that Defendant asks this Court to dismiss this action but states that "when

3    motion to compel arbitrations are granted, a stay is placed on the case until the matter is

4    arbitrated." (*Id.*).

5       **C.**    **Defendant's Reply**

6       In its reply, Defendant argues that: it does not matter that neither it nor Plaintiff signed

7    any of the arbitration provisions because the parties' conduct demonstrated that both parties

8    mutually consented to the agreement; Plaintiff has failed to show that it waived its right to compel

9    arbitration by removing this case to federal court; California law does not bar any arbitration

10    agreement because the provision Plaintiff relies on was not in effect at the time the arbitration

11    agreements were entered; Plaintiff's unconscionability challenges to the agreements must be

12    decided by an arbitrator because the arbitration agreements contained delegation provisions; and,

13    all of Plaintiff's claims fall within the scope of the arbitration agreement. (ECF No. 32).

14    **IV.**    **ANALYSIS**

15       As noted above, in deciding whether to compel arbitration pursuant to an arbitration

16    agreement, generally, a court decides whether there is an agreement to arbitrate between the

17    parties and whether the agreement covers the dispute. *Brennan*, 796 F.3d at 1130. All of the

18    disputed issues in this case fall within these two broader questions. However, the Court is mindful

19    that before addressing arbitrability issues, it must first focus, if there is one, on the existence,

20    enforceability, and scope of the parties' delegation provision. *See Brice*, 13 F.4th at 827.

21       Here, Defendant contends that the arbitration provisions contain delegation provisions.

22    However, the only arbitrability issue that Defendant argues should be decided pursuant to the

23    delegation provisions by an arbitrator, rather than the Court, is Plaintiff's contention that the

24    arbitration provisions are unconscionable. (*See* ECF No. 32). For the rest of issues at stake,

25    Defendant presents a merits-based argument and asks the Court to rule in its favor. Accordingly,

26    the Court will turn to the delegation provisions only when addressing the alleged

27    unconscionability of the arbitration agreements.

28    \\\

A.      **Whether there is an Agreement to Arbitrate**

1.      **Lack of signature on arbitration agreements**

The parties first dispute whether any agreement to arbitrate exists in the absence of the Plaintiff's signature. Defendant argues that Plaintiff's decision to "opt-in" to the Incentive Plans, which contained the arbitration provisions, shows that Plaintiff agreed to be bound by the arbitration provisions within those Plans. (ECF No. 32, p. 4). Plaintiff does not dispute that she opted-in to the Incentive Plans; however, she states that she "never *signed* an Arbitration Agreement with [D]efendant" nor did Defendant sign one. (ECF No. 31-1, p. 2) (emphasis added).

"Arbitration is a product of contract[,]" and a court will not grant a motion to compel arbitration unless it finds that there is a "clear agreement" to arbitrate. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).  "In California, a 'clear agreement' to arbitrate may be either express or implied in fact." *Id.* (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223, 236, (Cal. 2012)). "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement." *Pinnacle*, 55 Cal. 4th at 236. Acceptance of an agreement to arbitrate is implied-in-fact where the conduct of the contracting parties suggests such acceptance. *See Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (noting that a party's acceptance of an agreement may be "implied-in-fact where . . . the employee's continued employment constitutes her acceptance of an agreement proposed by her employer"). In California, it is the party moving to compel arbitration that bears the burden of proving the existence of an arbitration agreement. *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080, 1084 (N.D. Cal. 2021).

Turning to the facts of this case, Plaintiff received emails highlighting certain terms and conditions of the Incentive Plans, including an explanation that acceptance of the grants was conditioned on agreeing to arbitrate employment-related disputes. (ECF No. 14, pp. 3-8; *see* ECF Nos. 14-4; 14-5; 14-6; 14-7; 14-12; 14-13). For example, the email for the 2016 grant stated:

> In accepting the grant, you are agreeing to abide by the terms of the grant. The terms and conditions in the Restricted Stock Unit Terms of Award document include restrictive and other employee covenants. These covenants include the use of binding arbitration to resolve employment-related legal disputes that may arise between you and the company, non-disclosure, non-solicitation, cooperation and intellectual property conditions. Please carefully read the Employee Covenants of the Terms of Award document before accepting the grant.

> At the end of the grant acceptance, you will be prompted to provide your e-mail address. Retain the e-mail confirmation and Terms of Award document as documentation of your grant acceptance.

(ECF No. 14-13, pp. 2-3).[3] The email also provided instructions on how to access the 2010 Incentive Plan and information about "Aetna's Employment Dispute Arbitration Program." (*Id.* at 3). Within the 2010 Incentive Plan, there was an arbitration provision, requiring Plaintiff and Defendant to submit "all employment-related legal disputes between them . . . [to] binding arbitration." (ECF No. 14-10, p. 9). Moreover, Defendant provides its records showing that Plaintiff "electronically accepted" the 2016 option grant. (ECF No. 14, pp. 5-6, 9; ECF Nos. 14-8; 14-9). For the other award grants in years other than 2016, a similar process for awarding stock option grants was followed and similar arbitration agreements applied.

Defendant's production of this evidence meets its burden of proving the existence of the agreements to arbitrate. Although Plaintiff argues that neither party "signed" any arbitration agreement, a party's signature is just one way to show acceptance of an agreement. *Pinnacle*, 55 Cal. 4th at 236. Here, Plaintiff's electronic acceptance of the stock option grants, which required arbitration under the terms of the Incentive Plans as a condition of acceptance, and Defendant's subsequent grant of those stock options, is sufficient to establish an agreement by the parties based on their conduct. *See Aquino v. Toyota Motor Sales USA, Inc.*, No. 15-cv-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (concluding that plaintiff agreed to arbitration by receiving email that read, "[i]f you do not opt out, and you remain employed after November 10, 2013, you will have consented to the Mutual Agreement to Arbitrate Claims," and thereafter

---

[3] Because the process for granting stock options was similar for each year at issue, as are the arbitration provisions under the respective Incentive Plans, the Court does not discuss each stock option award individually but uses the 2016 grant as an example of how Plaintiff and Defendant mutually consented to arbitration in 2016.

1 continuing to work for her employer and failing to opt-out of the agreement); *Chico v. Hilton*

2 *Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *7 (C.D. Cal. Oct. 7, 2014)

3 (characterizing as "border[ing] on the frivolous" plaintiff's argument that arbitration agreement

4 was invalid or unenforceable because employing companies did not execute the agreement where

5 the companies "manifested their assent by presenting the agreements to Plaintiff for execution,

6 accepting the signed copies of the agreements, and then employing Plaintiff"). By contrast,

7 Plaintiff has produced no material evidence to suggest that the parties' conduct, described above,

8 did not establish the parties' mutual consent to be bound by the arbitration agreements.

9 **2.    Objection to Declaration of Barbara Waters**

10 Plaintiff next challenges the exhibits offered in support of Waters' declaration, *e.g.*, emails

11 regarding stock option grants, internal records showing Plaintiff's acceptance of the stock

12 options, and copies of the Incentive Plans as follows:

> 13 Defendant has submitted a Declaration of Barbara Waters in support of Motion to
> Compel Arbitration to compel arbitration. The declaration contains thirteen (13)
> 14 exhibits attached to it. Here, plaintiff objects to the thirteen (13) exhibits on the
> grounds that Barbara Waters failed to properly authenticate the exhibits as required
> 15 under Federal Rule of Evidence, Rule 901.
>
> 16 Plaintiff also questions whether Barbara Wa[]ters had the personal knowledge
> and/or established the foundation to submit the exhibits into evidence [Lack of
> 17 Personal knowledge. Federal Rule of Evidence, Rule 802] [ Lack of Foundation.
> Federal Rule of Evidence, Rule 602)].
> 18

19 (ECF No. 31, pp. 14-15). As an initial matter, because Plaintiff does not provide any developed

20 explanation for why Waters' declaration is not properly authenticated or lacking in personal

21 knowledge and foundation, the Court need not even consider this argument. *See Safley v. BMW of*

22 *N. Am., LLC*, No. 20-CV-00366-BAS-MDD, 2021 WL 409722, at *3 (S.D. Cal. Feb. 5, 2021)

23 (overruling an objection to authentication where "Plaintiffs d[id] not submit evidence contesting

24 the authenticity of the document before the Court").

25 Still, the Court has reviewed Waters' declaration and concludes that Plaintiff's cursory

26 argument fails. The burden under Federal Rule of Evidence 901 to authenticate a document is not

27 high, the proponent simply needs to "produce evidence sufficient to support a finding that the

28 item is what the proponent claims it is." *Kalasho v. BMW of N. Am., LLC*, 520 F. Supp. 3d 1288,

1293 (S.D. Cal. 2021) (quoting Fed. R. Evid. 901(a)). Here, the declaration is based, in part, on Waters' personal knowledge, and to the extent that it is not based on her personal knowledge, it is based on her investigation of the facts of this case and review of company records maintained in the regular course of business. (ECF No. 14, p. 1). Moreover, Waters declares that she has provided true and correct copies of the attached exhibits. Such is enough to authenticate the exhibits. *Kalasho*, 520 F. Supp. 3d at 1293 ("Defendant has met its burden to authenticate the Lease Agreement. Mr. Avena states that the attached Lease Agreement is a true copy of the original document kept in Dealer's files, that such documents and files are prepared by Dealer in its ordinary course of business when a vehicle is leased, and that he maintains control over the original documents kept in Dealer's files.").

Moreover, Waters' declaration is based on her own knowledge, her review of business records, and on her position as the Director of Equity Compensation for Aetna, Inc., which position makes her "very familiar with Aetna's stock option program and the process by which certain employees are awarded stock option grants." (ECF No. 14, p. 2). This lays a proper foundation and establishes her personal knowledge for the attached exhibits. *See Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688 JVS (JCGX), 2017 WL 4676580, at *2 (C.D. Cal. June 1, 2017) (concluding that witness's position, review of business records, and familiarity with company procedures laid a proper foundation and established her testimony about an arbitration was based on her personal knowledge); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Accordingly, Plaintiff's evidentiary attack on the exhibits attached to Water's declaration fails.

### 3.      Waiver of right to arbitrate

Plaintiff argues that once "[D]efendant chose to remove the case to federal court, [D]efendant made a decision to waive its right to arbitrate." (ECF No. 31, p. 14). Defendant counters that a party does not waive the right to arbitrate simply by removing a case to federal court. (ECF No. 32, p. 5).

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). "Courts in California . . . have recognized that when the FAA applies, whether a party has waive[d] a right to arbitrate is a matter of federal law not state substantive law." *Madrigal v. New Cingular Wireless Servs., Inc.*, No. 09-cv-00033-OWW-SMS, 2009 WL 2513478, at *8 (E.D. Cal. Aug. 17, 2009) (citations omitted). Under federal law, "[a] party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005) (internal citation omitted). The party arguing that the right to arbitrate has been waived "bears a heavy burden of proof." *Martin*, 829 F.3d at 1124 (internal citation omitted).

First, it is undisputed that Defendant was aware of its right to arbitrate even before this matter was removed, as Defendant's answer in state court raised waiver as an affirmative defense. (ECF No. 1-2, p. 9).

On the next prong, Plaintiff argues that, "[i]f defendant intended to compel arbitration, it should have done so prior to filing the Notice of Removal," which act was inconsistent with the right to arbitrate. (ECF No. 31, p. 14).

While "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate," the Ninth Circuit has concluded "that a party's extended silence and delay in moving for arbitration may indicate a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1125 (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). Notably, this element is "satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id.*   Removal to federal court itself does not constitute a waiver of the right to arbitrate.  *See DeMartini v. Johns*, No. 3:12-cv-03929-JCS, 2012 WL 4808448, at *5 (N.D. Cal. Oct. 9, 2012) ("Further, numerous courts have held that merely removing a case to federal court, where the defendant has not engaged in protracted litigation or obtained discovery, does not give

13

1  rise to waiver of the right to arbitrate because removal alone is not sufficiently inconsistent with

2  the right to seek arbitration and does not give rise to prejudice.") (collecting cases).

3        Here, Defendant filed its motion to compel arbitration roughly three months after

4  removing the case and the parties have not litigated any substantive issues. (*See* ECF Nos. 1, 12).

5  This Court agrees with Defendant that such limited litigation following removal is not

6  inconsistent with the right to arbitrate.

7        Lastly, Plaintiff argues that she will suffer prejudice because she will lose her

8  constitutional right to a jury trial. (ECF No. 31, p. 14). However, to establish prejudice, Plaintiff

9  must show prejudice resulting from acts that were inconsistent with Defendant's right to arbitrate.

10  But, as just discussed, Plaintiff has failed to show that Defendant took any acts inconsistent with

11  the right to arbitrate and thus she cannot show prejudice.

12        However, even if Plaintiff had shown that Defendant's actions were inconsistent with its

13  right to arbitrate, Plaintiff's loss of her right to a jury trial results from her own conduct in

14  agreeing to arbitration, not by anything that Defendant has done.[4] *See Kindred Nursing Centers*

15  *Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1429 (2017) (noting that an agent may waive a principal's

16  right to jury trial and bind the principal to arbitration); *R.J. Griffin & Co. v. Beach Club II*

17  *Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004) ("A party may, of course, waive the jury

18  trial right by signing an agreement to arbitrate or by binding itself to arbitration as a nonsignatory

19  through traditional principles of contract or agency law."). Rather, examples of prejudice

20  stemming from a defendant's acts inconsistent with the right to arbitrate include things like the

21  plaintiff "incur[ing] costs that [she] would not otherwise have incurred, that [she] would be forced

22  to relitigate an issue on the merits on which [she has] already prevailed in court, or that the

23  defendant[] ha[s] received an advantage from litigating in federal court that [it] would not have

24  received in arbitration," like gaining information about the other side's case that they could not

25  have known about through arbitration. *Martin*, 829 F.3d at 1126 (internal citations omitted). Here,

26

27  _____

   [4] Notably, one of the arbitration provisions provides as follows: "Grantee understands that in arbitration,
   an arbitrator *instead of a judge or jury* resolves the dispute and the decision of the arbitrator is final and
28  binding." (ECF No. 14-1, p. 8) (emphasis added).

                                      14

1  Plaintiff offers no such examples of prejudice. Accordingly, Plaintiff has failed to show that

2  Defendant waived its rights to compel arbitration by removing this case to federal court.

3  **4.       Arbitration barred under California law**

4      Plaintiff next argues that, "[u]nder California Labor Code § 432.6, employers no longer

5  are able to compel workers into arbitration for state discrimination claims or those brought under

6  the Labor Code. This is now the public policy in California." (ECF No. 31, p. 12). Defendant

7  argues that this provision does not apply here because it was not effective at the time the

8  arbitration agreements were entered. (ECF No. 32, p. 10).

9      Section 432.6(a) provides as follows:

10     A person shall not, as a condition of employment, continued employment, or the
       receipt of any employment-related benefit, require any applicant for employment
11     or any employee to waive any right, forum, or procedure for a violation of any
       provision of the California Fair Employment and Housing Act (Part 2.8
12     (commencing with Section 12900) of Division 3 of Title 2 of the Government
       Code) or this code, including the right to file and pursue a civil action or a
13     complaint with, or otherwise notify, any state agency, other public prosecutor, law
       enforcement agency, or any court or other governmental entity of any alleged
14     violation.

15  Cal. Lab. Code § 432.6(a).

16     However, as Defendant points out, § 432.6(h) provides that this provision "applies to

17  contracts for employment entered into, modified, or extended on or after January 1, 2020." (ECF

18  No. 32, p. 10). Here, Plaintiff was terminated in 2017, before this provision became effective.

19  Accordingly, § 432.6 cannot prohibit arbitration in this case.[5]

20     **5.       Unconscionability of the arbitration provisions – delegation clauses**

21     Plaintiff next argues that, even if Defendant can establish the existence of the arbitration

22  provisions, they cannot be enforced because the are procedurally and substantively

23  unconscionable for various reasons, *e.g.*, Plaintiff had no idea that the stock option grants

24  required her to submit to arbitration and the arbitration agreements fail to allow her the ability to

25

26  _____

27  [5] The Court recognizes that Defendant also argues that § 432.6(a)-(c) has been enjoined. (ECF No. 32, p.
    10). However, after briefing was completed in this case, the injunction imposed in *Chamber of Com. of
    United States v. Becerra*, 438 F. Supp. 3d 1078, 1108 (E.D. Cal. 2020), was later vacated by the Ninth
28  Circuit's decision in *Chamber of Com. of United States v. Bonta*, 13 F.4th 766 (9th Cir. 2021).

1    conduct reasonable discovery. (ECF No. 31, p. 11-12). However, Defendant counters that the

2    arbitration agreements contained delegation provisions requiring Plaintiff to submit her

3    unconscionability arguments to an arbitrator rather than this Court. (ECF No. 32, p. 6-7).

4         As noted above, if a delegation provision is at issue, a court first must focus on the

5    enforceability of that specific provision and not the enforceability of the arbitration agreement as

6    a whole. *Brice*, 13 F.4th at 827. Moreover, to successfully challenge the validity of a delegation

7    provision, a party must direct her challenge to the delegation provision itself even if it is nested

8    within a larger arbitration agreement. *Rent-A-Center*, 561 U.S. at 72 ("Accordingly, unless

9    Jackson challenged the delegation provision specifically, we must treat it as valid under [9

10    U.S.C.] § 2, and must enforce it . . ., leaving any challenge to the validity of the Agreement as a

11    whole for the arbitrator."). The reason for this is "because [9 U.S.C.] § 2 states that a 'written

12    provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without

13    mention of the validity of the contract in which it is contained." *Id.* at 70 (emphasis in original).

14    Accordingly, 9 U.S.C. § 2 "operates on the specific 'written provision' to 'settle by arbitration a

15    controversy' that the party seeks to enforce." *Id.* at 72 (emphasis added). "Thus, a party's

16    challenge to another provision of the contract, or to the contract as a whole, does not prevent a

17    court from enforcing a specific agreement to arbitrate." *Id.* at 70.

18         Defendant argues that its Incentive Plans contained delegation provisions, with one

19    recurrent provision stating that arbitration would "be conducted pursuant to the AAA's National

20    Rules for Dispute Resolution," (ECF No. 14-1, p. 8, *see* ECF No. 14-10, p. 10 (including similar

21    language)), which serves to incorporate the AAA's Rules, of which AAA Rule 6(a) states that

22    "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any

23    objections with respect to the existence, scope or validity of the arbitration agreement, (ECF No.

24    15-6, p. 13). Notably, the Ninth Circuit has held that "incorporation of the AAA rules constitutes

25    clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability,"

26    specifically, the question of unconscionability.[6] *Brennan*, 796 F.3d at 1130.

27

28    [6] The specific provision at issue in *Brennan* stated: "Except with respect to any claim for equitable relief . . . . any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with

Given the existence of these delegation provisions in the Incentive Plans, "the only remaining question is whether the particular agreement[s] to delegate arbitrability—the Delegation Provision[s]—[are themselves] unconscionable."[7] *Id.* at 1132. However, as Defendant points out, Plaintiff fails to attack the delegation provisions as unconscionable. (ECF No. 32, p. 7). Accordingly, the Court is foreclosed from considering the attack on the arbitration agreements as unconscionable and the Plaintiff must instead present her unconscionability arguments to the arbitrator.[8] *Brennan*, 796 F.3d at 1133.

**B.     Whether the Agreement Covers the Dispute**

Having addressed all issues regarding the existence and enforceability of the arbitration agreements, the Court turns to the final issue presented: whether the arbitration provisions cover the claims brought in Plaintiff's complaint.

**1.     Scope of arbitration agreement relating to Plaintiff's causes of action**

On this issue, Plaintiff first argues that the arbitration provisions do not cover her seven causes of action, brought under California's Fair Employment and Housing Act, California Family Rights Act, and the California's Labor Code, because the arbitration agreements "do not specify that it includes claims under [those statutes.]" (ECF No. 31, p. 8). Defendant understands this as an argument that such statutory claims are not subject to arbitration and counters with case law noting that claims under these statutes are subject to arbitration. (ECF No. 32, p. 6) (citing, among other cases, *Burnett v. Macy's W. Stores, Inc.*, No. 1:11-cv-01277 LJO, 2011 WL 4770614, at *4 (E.D. Cal. Oct. 7, 2011) ("[California Fair Housing and Employment Act] claims

---

the Bank or the termination thereof . . . shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." 796 F.3d at 1128 (alteration in original).

[7] The Court recognizes that Defendant argues that the agreements contained other delegation provisions, with one purported provision stating as follows: "A dispute as to whether this Program applies must be submitted to the binding arbitration process set forth in this Program." (ECF No. 14-1, p. 8; *see* ECF No. 13, p. 25). Because the Court has already concluded that the pertinent arbitration agreements contain other delegation provisions, it declines to address whether this language also constitutes a separate delegation provision.

[8] Defendant alternatively argues that, if the arbitration agreements did not contain delegation provisions, Plaintiff's unconscionability arguments nonetheless fail on the merits. (ECF No. 32, pp. 8-10). However, because the Court has found the existence of delegation provisions, the Court finds it imprudent to address this argument, even in the alternative, because "a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous." *Henry Schein, Inc.*, 139 S. Ct. at 529 (internal quotation marks and internal citation omitted).

1  are arbitrable under California law."). More generally, Defendant argues that "[a]ll seven of

2  Plaintiff's causes of action arise out of Plaintiff's employment with Aetna, and are based upon

3  Aetna's alleged adverse employment actions against Plaintiff," thus the parties' agreement to

4  arbitrate "all employment-related legal disputes" applies to all of Plaintiff's causes of action.

5  (ECF No. 13, p. 20).

6       As an initial matter, the Court does not understand Plaintiff to be arguing that the statutory

7  basis for her claims places her claims beyond arbitration; rather, it understands Plaintiff to be

8  arguing that, because the arbitration provisions themselves did not specify that such statutory

9  claims were subject to arbitration, her claims do not fall within the scope of the arbitration

10  agreements.[9] (*See* ECF No. 31, p. 8 ("When the Arbitration agreement fails to specifically

11  mention the statutory claims, the Arbitration Agreement is unenforceable.")).

12       "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

13  arbitration, whether the problem at hand is the construction of the contract language itself or an

14  allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v.*

15  *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "To require arbitration, [a plaintiff's] factual

16  allegations need only 'touch matters' covered by the contract containing the arbitration clause."

17  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). "The standard for demonstrating

18  arbitrability is not high." *Id.* at 719. Rather, "[i]n the absence of any express provision excluding

19  a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to

20  exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf*

21  *Nav. Co.*, 363 U.S. 574, 584-85 (1960).

22       Here, the allegations of Plaintiff's complaint concern her alleged disability and

23  Defendant's alleged improper conduct based on her disability, including terminating her

---

[9] To the extent that Defendant correctly frames this issue, the Court notes that Plaintiff has not cited a single case indicating that her statutory claims are not subject to arbitration, and case law (including that cited by Defendant) refutes such an argument. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1107 (9th Cir. 2002) (noting that California Fair Housing and Employment Act claim was arbitrable); *Parker v. New Prime, Inc.*, No. LACV2003298DOCAGR, 2020 WL 6143596, at *5 (C.D. Cal. June 9, 2020) (compelling arbitration of claims brought under California's Labor Code); *Montes v. San Joaquin Cmty. Hosp.*, No. 1:13-cv-01722-AWI, 2014 WL 334912, at *15 (E.D. Cal. Jan. 29, 2014) (compelling arbitration of claims brought under California's Family Rights Act).

1   employment. (ECF No. 1-1, pp. 7-8).  Such allegations unquestionably "touch matters" covered

2   by the arbitration clauses that required Plaintiff to submit "all employment-related legal disputes .

3   . . [to] binding arbitration," thus Defendant has met its burden of showing that Plaintiff's claims

4   are covered by the arbitration agreements. (ECF No. 14-3, p. 10; ECF No. 14-10, p. 9).

5          The Court notes that Plaintiff cites a case that found general arbitration language

6   insufficient in the collective-bargaining context. *See Hoover v. Am. Income Life Ins. Co.*, 206 Cal.

7   App. 4th 1193, 1208 (Cal. App. 4th Dist. 2012) ("[A]ll disputes, claims, questions, and

8   controversies of any kind or nature arising out of or relating to this contract shall be submitted to

9   binding arbitration."); (ECF No. 31, p. 8). However, "the requirement of specificity appears to be

10  limited to the collective bargaining context or if it applies to all employment contracts in general.

11  The logic is that an arbitration clause is normally understood to be limited to the terms of the

12  collective bargaining agreement itself rather than to any additional statutory protections." *Orozco*

13  *v. Gruma Corp.*, No. 1:20-cv-1290 AWI EPG, 2021 WL 4481061, at *8 (E.D. Cal. Sept. 30,

14  2021). Here, the arbitration agreements concerned stock option grants and were not part of a

15  collective bargaining agreement or contract for employment. Accordingly, Plaintiff's employment

16  law claims fall within the scope of the arbitration provisions. *Montes v. San Joaquin Cmty. Hosp.*,

17  No. 1:13-cv-01722-AWI, 2014 WL 334912, at *15 (E.D. Cal. Jan. 29, 2014) (compelling

18  arbitration of claim brought under California's Family Rights Act where the arbitration provision

19  covered "'the full range of employment disputes' including, but not limited to, claims of

20  employment discrimination, a claim of wrongful or unlawful termination, claims for wages or

21  other compensation, and tort claims"); *Reynosa-Juarez v. Accountable Healthcare Staffing, Inc.*,

22  No. 5:18-cv-06302-EJD, 2019 WL 5814653, at *6 (N.D. Cal. Nov. 7, 2019) (concluding that the

23  plaintiff's meal, rest period, and overtime claims were covered by arbitration provision stating as

24  follows: "Any dispute to this agreement will be settled by binding arbitration.").

25                  **2.      Scope of arbitration agreement relating to injunctive relief**

26          Plaintiff next argues that the arbitration provisions do not apply to her request for

27  injunctive relief stated as follows in her complaint:

28          No adequate remedy exists at law for the injuries suffered by plaintiff MONIKA

                                                    19

1
2
3
4
5

AGUIRRE herein, insofar as the employment opportunity that defendant AETNA RESOURCES, LLC also known as AETNA has denied to plaintiff MONIKA AGUIRRE cannot be secured absent injunctive relief. If this court does not grant injunctive relief of the type for the purpose specified below, plaintiff MONIKA AGUIRRE will suffer irreparable injury. Therefore, plaintiff MONIKA AGUIRRE requests the following injunctive relief: requiring defendant [] AETNA RESOURCES, LLC also known as AETNA to prevent disability discrimination from occurring in its workplace.

6    (ECF No. 31, p. 10 (quoting ECF No. 1-1, p. 13). In support, Plaintiff cites *Broughton v. Cigna*

7    *Healthplans of California*, 988 P.2d 67 (1999), arguing "that requests for injunctive relief are not

8    arbitrable because an arbitrator lacks the institutional continuity and appropriate jurisdiction to

9    enforce and if needed, modify such an injunction." (*Id.* at 9). This argument requires an overview

10   of *Broughton*:

11
12
13
14
15
16

In *Broughton*, the California Supreme Court considered whether plaintiffs asserting claims under that state's Consumers Legal Remedies Act ("CLRA") could be compelled to arbitrate those claims. Plaintiffs requested remedies including an order enjoining the defendant from engaging in deceptive advertising. *Broughton*, 90 Cal.Rptr.2d 334, 988 P.2d at 71. The court concluded that an agreement to arbitrate could not be enforced in a case where the plaintiff is "functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public." *Id.*, 90 Cal.Rptr.2d 334, 988 P.2d 67 at 76. This decision was based on the court's determination that the California legislature "did not intend this type of injunctive relief to be arbitrated." *Id.*

17
18
19
20
21
22
23
24

According to the California Supreme Court, "the evident institutional shortcomings of private arbitration in the field of such public injunctions" would be unacceptable in a case where there was more "at stake" than a "private dispute by parties who voluntarily embarked on arbitration aware of the trade-offs to be made." *Id.*, 90 Cal.Rptr.2d 334, 988 P.2d at 77. The court noted that enforcement of an arbitrator's injunction would require a new arbitration proceeding, but that a court retains jurisdiction and could more easily handle the "considerable complexity" involved in supervising injunctions. *Id.* Further, judges "are accountable to the public in ways arbitrators are not." *Id.* The court thus found that the judicial forum "has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators." *Id.*, 90 Cal.Rptr.2d 334, 988 P.2d 67 at 78.

25
26
27
28

The *Broughton* court held also that prohibiting the arbitration of CLRA claims for injunctive relief did not contravene the FAA: "although the [U.S. Supreme Court] has stated generally that the capacity to withdraw statutory rights from the scope of arbitration agreements is the prerogative solely of Congress, not state courts or legislatures, it has never directly decided whether a [state] legislature may restrict a private arbitration agreement when it inherently conflicts with a public statutory purpose that transcends private interests." *Id.* (internal citation omitted).

1    *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 958 (9th Cir. 2012), *on reh'g en banc*, 718 F.3d

2    1052 (9th Cir. 2013). However, Plaintiff's reliance on *Broughton* fails for two reasons.

3        First, the Ninth Circuit has held the FAA preempts the *Broughton* rule as being

4    inconsistent with *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), in which Supreme

5    Court concluded that a California state rule regarding the unconscionability of class arbitration

6    waivers in consumer contracts was preempted by the FAA. *Ferguson v. Corinthian Colleges,*

7    *Inc.*, 733 F.3d 928, 937 (9th Cir. 2013).

8        Second, even if the *Broughton* rule were not preempted by the FAA, "the *Broughton* rule

9    applies only when 'the benefits of granting injunctive relief by and large do not accrue to that

10    party, but to the general public in danger of being victimized by the same deceptive practices as

11    the plaintiff suffered.'" *Kilgore*, 718 F.3d at 1060 (quoting *Broughton*, 988 P.2d at 76)). Here,

12    Plaintiff does not pursue a public injunction. *Hodges v. Comcast Cable Commc'ns, LLC*, 12 F.4th

13    1108, 1114 (9th Cir. 2021) (noting that, under California law, injunctive relief that would

14    incidentally benefit the general public is still a request for private injunctive relief where it

15    primarily would resolve a private dispute between the individual parties). Notably, citing the

16    "employment opportunity" that Defendant allegedly improperly "denied to [P]laintiff," she argues

17    that she "will suffer irreparable injury" should Defendant not be required "to prevent disability

18    discrimination from occurring in its workplace." (ECF No. 1-1, p. 13). Such requests for private

19    injunctive relief are subject to arbitration under California law. *Hodges*, 12 F.4th at 1121

20    (discussing California law and compelling arbitration of claim for private injunctive relief).

21    Accordingly, Plaintiff's claim for injunctive relief is subject to arbitration.

22        **C.**     **Final Disposition**

23        Because both of the gateway questions have been answered in the affirmative, the motion

24    to compel arbitration should be granted. *See* 9 U.S.C. § 3; *Tillman v. Tillman*, 825 F.3d 1069,

25    1073 (9th Cir. 2016) ("When a party petitions a court to compel arbitration under the FAA, 'the

26    district court's role is limited to determining whether a valid arbitration agreement exists and, if

27    so, whether the agreement encompasses the dispute at issue. If the answer is yes to both

28    questions, the court must enforce the agreement.'") (quoting *Lifescan, Inc. v. Premier Diabetic*

1   *Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

2   When a court concludes that a motion to compel arbitration should be granted, the FAA

3   provides that a court may stay the trial of the action upon application of one of the parties until

4   the arbitration proceedings are complete. *See* 9 U.S.C. § 3. Notwithstanding § 3, a court also has

5   authority to grant a dismissal where a court summarily finds that all claims are barred by an

6   arbitration clause. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)

7   (providing that a district court acted within its discretion when it dismissed, rather than stayed,

8   claims that were contractually required to be submitted to arbitration). *See also Johnmohammadi*

9   *v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (providing that, notwithstanding

10  the language of § 3, a district court may either stay the action or dismiss it outright when it

11  determines that all of the claims raised in the action are subject to arbitration).

12  Here, dismissal is appropriate because all claims are barred from proceeding in this Court

13  due to the parties' agreement to arbitrate employment disputes.

14  **V.      CONCLUSION AND RECOMMENDATIONS**

15  Accordingly, the Court RECOMMENDS as follows:

16  1.      Defendant's motion to compel arbitration (ECF No. 12) be GRANTED;

17  2.      The parties be required to submit all claims in this matter to arbitration;

18  3.      This case be DISMISSED; and

19  4.      The Clerk of Court be DIRECTED to CLOSE this case.

20  These findings and recommendations are submitted to the United States District Judge

21  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen

22  (14) days after being served with these findings and recommendations, any party may file written

23  objections with the Court. Such a document should be captioned "Objections to Magistrate

24  Judge's Findings and Recommendations."

25  \\\

26  \\\

27  \\\

28  \\\

1      Any reply to the objections shall be served and filed within fourteen (fourteen) days after

2    service of the objections.

3

4    IT IS SO ORDERED.

5      Dated:   **December 3, 2021**    /s/ _Erica P. Grosjean_

6                UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28